**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KAZIMIR MALIGRANDA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:26 C 50082** |
| | ) | |
| **CINCINNATI TOOL STEEL CO.,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kazimir Maligranda worked for Defendant Cincinnati Tool Steel Co. in a supervisory role from September 2013 until Defendant terminated him on December 5, 2025. Maligranda alleges that he has diabetes and kidney failure and that Defendant violated the Americans with Disabilities Act ("ADA") by discriminating against him, failing to accommodate his disability, subjecting him to disability-based harassment, and retaliating against him. He also alleges that Defendant violated Title VII of the Civil Rights Act of 1964 by subjecting him to sex-based discrimination, sex-based harassment, and Title VII retaliation. Finally, Maligranda alleges that Defendant violated the Family and Medical Leave Act ("FMLA") by interfering with his leave rights and retaliating against him for inquiring about FMLA benefits.

Defendant answered all counts except for Counts II (failure to accommodate), V (sex-based discrimination), and VIII (FMLA interference), which it moved to dismiss under Rule 12(b)(6). FED. R. CIV. P. 12(b)(6). For reasons explained below, the motion [32] is granted in part and denied in part.

## BACKGROUND

Unless otherwise noted, the following facts are taken from Maligranda's First Amended Complaint [24] ("FAC") and are accepted as true, with all reasonable inferences drawn in his favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

## I. Factual Background

In September 2013, Kazimir Maligranda, a resident of Winnebago County, Illinois, began working for Cincinnati Tool Steel Co. in Rockford, Illinois, as a Grinder.[1] (FAC [24] ¶¶ 11, 12, 15.) His duties included supervising and monitoring employees, conducting safety meetings, and completing employee safety reports. (*Id.* ¶ 17.) Defendant promoted Maligranda to Lead Grinder in approximately 2022. (*Id.* ¶ 24.) Maligranda alleges that he met or exceeded Defendant's performance expectations throughout his employment. (*Id.* ¶ 98.) Maligranda has diabetes and kidney failure, "physical impairments" that "substantially limit major life activities, including eating, concentrating, caring for [him]self, and managing bodily functions." (*Id.* ¶ 18.) He alleges that these conditions increased his "need for breaks, including bathroom breaks and breaks to manage his medical conditions," but did not prevent him from performing the "essential functions of his job, with or without reasonable accommodation." (*Id.* ¶¶ 19–20.)

Maligranda requested accommodations from Defendant's Human Resources department in roughly 2024, when his "diabetes symptoms required additional workplace support." (*Id.* ¶ 26.) He sought "additional breaks, bathroom breaks, and a private space to manage his medical conditions," specifically diabetes. (*Id.* ¶¶ 27–28.) His complaint does not identify the recipient of his accommodation request, but in his opposition brief he asserts that he sent this request to a Human Resources employee named Stacy Wartgow, and that Defendant never provided the requested accommodations. (Pl. Opp. [34] at 3.)

Around May 2025, Maligranda was diagnosed with kidney failure, requiring dialysis. (FAC [24] ¶ 29.) He scheduled dialysis appointments to occur after work, so he could avoid missing work. (*Id.* ¶ 30.) Maligranda alleges that, at this point, his conditions required additional breaks

[1] Maligranda has not described his job responsibilities, but the court understands that a "Steel Grinder is responsible for shaping, smoothing, and finishing metal parts, usually made of steel, by using grinding machines or hand tools. They remove excess material, burrs, and imperfections from metal surfaces to meet specific dimensions and surface quality standards." *What Does a Steel Grinder Do?*, Zip Recruiter, https://www.ziprecruiter.com/e/Steel-Grinder-What-does-a-Steel-Grinder-do (last visited Oct. 1, 2026).

(he does not say how many or at what intervals) beyond the "two five-minute breaks and one twenty-minute lunch break" allowed by Defendant's policy. (*Id.* ¶¶ 31, 32.) Maligranda alleges that he "informed Defendant of his medical conditions and need for medical treatment." (*Id.* ¶ 33.) He says he told his uncle, who apparently works for Defendant but is unnamed in Maligranda's complaint, and Steve Bartlett, who is a Mill Operator for Defendant, about his medical conditions. (*Id.* ¶ 34.)

In approximately September 2025, Maligranda "passed out at work due to low blood sugar caused by his diabetes." (*Id.* ¶ 35.) His uncle called an ambulance, and Maligranda was taken to the hospital. (*Id.* ¶¶ 36–37.) He contends that the incident put management on notice of his diabetes and the severity of his condition. (*Id.* ¶ 38.)

Around this time, during the fall of 2025, Maligranda's coworker Darren Pallanshe allegedly subjected Plaintiff to "severe and ongoing disability-based harassment." (*Id.* ¶¶ 39.) Pallanshe called Maligranda a "liability" and a "waste of space"; mocked his diabetes by saying, "[a]t least I don't fall on the ground and have seizures"; and repeatedly used "sexist slurs," calling Maligranda a "pussy," "bitch," "gay," and "fag." (*Id.* ¶¶ 40–42.) Plaintiff's uncle and David (last name unknown), a Grinder, witnessed Pallanshe call Plaintiff "pussy" and "bitch." (*Id.* ¶ 43.) Pallanshe allegedly "left notes in Plaintiff's work area and locker[,] called him derogatory names, removed Plaintiff's name tags from his locker, and repeatedly flipped Plaintiff off at work." (*Id.* ¶ 46.) Bartlett, the Mill Operator, saw the notes. (*Id.* ¶ 47.) Maligranda asked Defendant to check security cameras "regarding" the notes, but Defendant "failed to do so." (*Id.* ¶ 48.) Plaintiff says he felt humiliated and degraded by Pallanshe's discriminatory conduct. (*Id.* ¶ 49.)

Around October 2025, Maligranda reported Pallanshe's harassment to his immediate supervisor, Kon (last name unknown), and explained that he wanted it to stop. (*Id.* ¶¶ 50–51.) Pallanshe continued "making discriminatory and derogatory comments" even after Plaintiff complained, and continued "to flip Plaintiff off and leave derogatory notes for Plaintiff." (*Id.* ¶¶ 54, 56, 57.) Maligranda alleges that Kon took "no corrective action" and instead "discouraged

escalation," not wanting to "bring attention to the issue because it would bring eyes and red flags on their building." (*Id.* ¶¶ 55, 70.) Maligranda also alleges that his supervisor (whether Maligranda refers to Kon or someone else is unclear) told him not to escalate the harassment because it would "involve paperwork and they were behind on grinding." (*Id.* ¶ 71.) Shortly after Maligranda reported the harassment to Kon, he was denied a raise that he was scheduled to receive around November 7, 2025. (*Id.* ¶¶ 58–59.) He alleges that non-disabled employees Steve Bartlett and Willy Robinson received their expected raises. (*Id.* ¶ 61.) In his opposition brief, he also mentions that other employees in the building, "including Stacy Wartgow, also received raises." (Pl. Opp. [34] at 4.)

After Maligranda reported Pallanshe's harassment and discriminatory conduct, he alleges that his supervisor (again, not specifically identified) "no longer permitted him to take breaks at the frequency required for his disability." (FAC [24] ¶ 62.) He alleges that Defendant did not uniformly enforce its break policies: "[e]mployees on second and third shift were permitted to take frequent breaks, and smoke breaks as often as they wanted." (*Id.* ¶ 64.) He asserts that David Kramer, a non-disabled employee, "continued taking frequent smoking breaks without reprimand," and another non-disabled employee, Jerek Turner, "had no work in his area but was allowed to sit idly without disciplinary action." (*Id.* ¶¶ 65–66.) Both employees reported to the same supervisor as Plaintiff. (*Id.* ¶ 67.)

On approximately November 11, 2025, Plaintiff again "passed out at work from low blood sugar." (*Id.* ¶ 72.) The plant's Head Supervisor, Kevin Shoonover, called an ambulance, but Maligranda recovered after taking glucose tablets and continued working without further medical intervention. (*Id.* ¶¶ 73–75.) Because the harassment continued, "Plaintiff escalated his complaint" to Schoonover. (*Id.* ¶ 76.) Schoonover's authority relative to Kon's is unclear, but in his brief opposing Defendant's motion to dismiss, Maligranda says that Schoonover had been his manager for about ten years. (Pl. Opp. [34] at 5.) Rather than investigate, Schoonover allegedly

told him to "cut Darren [Pallanshe] some slack." (FAC [24] ¶¶ 77–78.) When Maligranda said he was undergoing dialysis, Schoonover responded, "[w]ell, that's pretty costly." (*Id.* ¶¶ 79–80.)

Shortly thereafter, and about one week before his termination, Plaintiff asked someone—in his opposition brief, he specifies that this was Wartgow—to provide him with FMLA paperwork. (*Id.* ¶ 81; Pl. Opp'n [34] at 5.) He alleges that, while Wartgow promised to do so, she "failed to provide [him] with any responsive information." (*Id.* ¶ 82.) In late November 2025, Defendant sent employees a letter stating "that the cost of employee medical insurance would increase because of an unanticipated amount of employee medical issues." (*Id.* ¶ 85.)

On approximately December 5, 2025, Defendant terminated Plaintiff; his paperwork said and Schoonover stated that he was "no longer needed." (*Id.* ¶¶ 86–87.) Maligranda alleges that he had no disciplinary write-ups or attendance issues and that the stated reason for his termination was false and pretextual. (*Id.* ¶¶ 88–89.) After his termination, Maligranda "asked Defendant to return personal property that remained in his locker, including his prescription glasses," but was told (he does not say by whom) that his belongings would not be returned because they had been discarded. (*Id.* ¶¶ 90–91.) Defendant also "refused to return" a filing cabinet that Maligranda had brought from home to the workplace. (*Id.* ¶ 92.)

On December 9, 2025, Plaintiff filed an EEOC charge, alleging "sex discrimination, disability discrimination, harassment, and retaliation." (EEOC Charge [24-1] at 2.) The EEOC granted his request for a Notice of Right to Sue on February 5, 2026, noting that the EEOC would likely be unable to complete an investigation within 180 days. (Notice [24-2] at 2.)

This lawsuit followed. Maligranda filed his complaint on February 27, 2026 [1], and later filed a First Amended Complaint on June 10, 2026, alleging nine counts: ADA disability-based discrimination, failure to accommodate, disability-based harassment, and retaliation; Title VII sex-based discrimination, sex-based harassment, and retaliation; and FMLA interference and retaliation. (FAC [24] ¶¶ 105–88.) Defendant has moved to dismiss the ADA failure to accommodate claim, the sex-based discrimination claim, and the FMLA interference claim under

Rule 12(b)(6). FED. R. CIV. P. 12(b)(6); (Def. Mem. [32-1] at 1.) The motion is fully briefed.

**LEGAL STANDARD**

Rule 12(b)(6) tests the sufficiency of a complaint, not its merits. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022). A complaint must provide "a short and plain statement" showing that the plaintiff is entitled to relief, *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting FED. R. CIV. P. 8(a)(2)), and must contain enough factual allegations, when taken as true, to "state a claim that is plausible on its face," *id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination." *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).

The court accepts all well-pleaded facts as true and draws reasonable inferences in Maligranda's favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). The court does not, however, accept legal conclusions or unsupported conclusory assertions as true. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (citations omitted). The court may consider documents attached to the complaint, as well as documents that the complaint refers to and that are central to the claims. *Muthana v. Mullin*, 171 F.4th 967, 973 (7th Cir. 2026) (citations omitted). The court therefore considers the EEOC Charge and EEOC Notice in evaluating Defendant's exhaustion arguments. (EEOC Charge [24-1]; Notice [24-2].)

**DISCUSSION**

**I. ADA Failure to Accommodate**

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). The Act also requires employers to "make[] reasonable accommodations to the known physical or mental limitation of an otherwise qualified individual with a disability." § 12112(b)(5)(A). It is well-recognized, however, that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA." *Riley v.*

*City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (quoting *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999).

Before bringing an ADA claim in federal court, a plaintiff must file a charge with the EEOC and receive a right-to-sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). In court, a plaintiff may pursue only those claims included in the EEOC charge or claims that are "like or reasonably related" to the charge and could reasonably grow out of an EEOC investigation. *Chaidez*, 937 F.3d at 1004 (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). To satisfy this standard, the plaintiff must show that "(1) 'there is a reasonable relationship between the allegations in the charge and the claims in the complaint' and (2) 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" *Chaidez*, 937 F.3d at 1004 (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). Because a claim of failure to accommodate is distinct from an ADA discrimination claim, however, "one cannot expect" a failure-to-accommodate claim "to develop from an investigation into a claim that an employee was terminated because of a disability." *Riley*, 909 F.3d at 190 (quoting *Green*, 197 F.3d at 898). Therefore, a plaintiff who brings a claim of failure to accommodate (rather than just ADA discrimination) must have alleged the failure to accommodate, rather than just ADA discrimination, in the underlying EOC charge, such that the claim "can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Chaidez*, 937 F.3d at 1004 (quoting *Cheek*, 31 F.3d at 500).

Courts "review the scope of an EEOC charge liberally," recognizing that charges are usually filed by lay complainants. *See Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015). Even so, the court does not believe Plaintiff alleges a failure to accommodate in his EEOC charge. The charge discusses "sex discrimination, disability discrimination, harassment, and retaliation." (EEOC Charge [24-1] at 2.) The charge asserts that Maligranda "was qualified to perform the essential functions of [his] job, with or without reasonable accommodation" (*id.*), but this reference merely identifies Plaintiff as a "qualified individual with a

disability"—that is, a person entitled to the protections of the ADA, 42 U.S.C. § 12111(8); it is not an allegation that Defendant failed to provide an accommodation. The charge otherwise does not mention "accommodation," nor does it mention any of his requests for more breaks to accommodate his medical conditions, as alleged in Maligranda's complaint. Under *Green* and *Riley*, the accommodation claim cannot reasonably be expected to grow out of an investigation into the charge. Maligranda therefore failed to exhaust his administrative remedies as to Count II.

The court notes that Maligranda's alleged requests for accommodation will nevertheless be part of the evidence in this case. Maligranda has alleged that he "asked Human Resources for accommodations," including "additional breaks, bathroom breaks, and a private space to manage his medical conditions," (FAC [24] ¶¶ 26–27), and that he "informed Defendant of his medical conditions." (*Id.* ¶ 33). He adds more detail in his opposition brief, explaining that he directed these requests toward Stacy Wartgow, and that she "never provided" the requested accommodations. (Pl. Opp. [34] at 3). In his amended complaint, Maligranda further alleges that "[a]fter Plaintiff reported discriminatory and harassing conduct against him, Defendant stopped accommodating Plaintiff's disabilities" by forbidding him from taking the additional breaks he needed. (FAC [24] ¶¶ 62, 97, 119). Those allegations support Maligranda's claim of retaliation (Count IV). *See Summerland v. Exelon Generation Co.*, 455 F. Supp. 3d 646, 662–63 (N.D. Ill. 2020) (describing ADA retaliation elements). Count IV is not challenged in this motion.

Count II is dismissed.

## II. Title VII Sex Discrimination

Title VII prohibits an employer from refusing to hire, discharging, or otherwise discriminating against an individual with respect to the terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). To state a claim, Maligranda must state facts to support the allegation that Defendant took an adverse employment action against him because of his sex. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) ("In the employment discrimination context . . . a plaintiff must advance plausible

allegations that []he experienced discrimination because of [his] protected characteristics."). Plaintiff alleged various adverse employment actions, including "resistance from his manager to report discriminatory and harassing conduct, denial of break, denial of a raise granted to non-disabled employees, and ultimately, termination of his employment." (FAC [24] ¶ 96.)

Maligranda has not alleged facts supporting an inference that Defendant took adverse action against him because of his sex. While Pallanshe targeted Maligranda with sex-based slurs and other insults, Plaintiff does not allege that Pallanshe had authority to influence any aspects of his employment, including denial of any accommodations requests, denial of a raise, or his ultimate termination. (FAC [24] ¶¶ 39–57, 86–88.) Plaintiff also states that David Kramer and Jerek Turner received more favorable treatment with respect to breaks, but he describes them as "non-disabled," not as female. (*Id.* ¶¶ 64–66.) Finally, Maligranda has not alleged facts supporting the claim that Defendant terminated him because of his sex.

Plaintiff's opposition to the motion to dismiss adds that female employees received raises and extended, unscheduled breaks, but those allegations do not appear on the face of his complaint, nor do they appear in his EEOC charge. (Pl. Opp. [34] at 4.) While Maligranda checked the box for sex-based discrimination on his EEOC charge, the only sex-related conduct he discussed was Pallanshe's sexist slurs. (EEOC Charge [24-1] at 2–3.) That conduct appears to support Maligranda's claim of sex-based harassment, which is not challenged in this motion. The involvement of sex-based conduct in the workplace does not, by itself, establish sex-based discrimination; the pleadings must connect the adverse action to the protected characteristic. *See Kaminski*, 23 F.4th at 776. Maligranda failed to do so. The court therefore dismisses Count V.

## III. FMLA Interference

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise of or attempt to exercise rights provided by the Act. 29 U.S.C. § 2615(a)(1). To establish an FMLA interference claim, Maligranda must show that "(1) [he] was eligible for FMLA protections; (2) [his] employer was covered by the FMLA; (3) [he] was entitled to take leave under the FMLA;

(4) [he] provided sufficient notice of intent to take leave; and (5) [his] employer interfered with or restrained FMLA benefits to which [he] was entitled." *Reitman v. Evanston/Skokie Cmty. Consol. Sch. Dist.*, 764 F. Supp. 3d 717, 724 (N.D. Ill. 2025) (citing *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022)). In addition to these elements, Maligranda must show that Defendant's actions prejudiced him. *Id.* (citing *Ziccarelli*, 35 F.4th at 1089).

Maligranda established the first three elements of an FMLA interference claim. He alleges that supervisors and coworkers at Defendant's workplace knew of his diabetes and kidney failure, that he was undergoing dialysis, and that he had passed out on the job. (FAC [24] ¶¶ 33–38, 72–75, 79.) Maligranda states that he was FMLA-eligible and gave proper notice to his employer. (*Id.* ¶¶ 171–172); *see also Burnett v. LFW Inc.*, 472 F.3d 471, 479 (7th Cir. 2006) ("The employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an FMLA qualifying condition."). He further alleges that, shortly after discussing dialysis with Schoonover, he "sought information regarding" the FMLA from Defendant. (FAC [24] ¶ 81.) In his opposition to Defendant's motion to dismiss, Maligranda asserts that Wartgow promised to provide him with the information and that she did not do so before Defendant terminated him. (FAC [24] ¶¶ 81–82; Pl. Opp. [34] at 5, 10.) Taking Plaintiff's allegations as true, he has shown that he was entitled to FMLA protections due to his serious health conditions and that he was entitled to take leave under the FMLA; moreover, Defendant does not dispute that it was covered by the FMLA. "Once an employer has enough information to determine an employee is seeking FMLA-qualifying leave, the employer needs to notify the employee whether the requested leave will be designated as FMLA leave within five business days, absent extenuating circumstances." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 367 (7th Cir. 2020). A failure to inform an employee of FMLA rights can constitute interference by itself. *See, e.g.*, *Reitman*, 764 F. Supp. 3d at 725. Maligranda alleges that Defendant failed to respond to his FMLA inquiry and failed to provide him with information about the FMLA. This allegation satisfies the fourth and fifth

elements of the FMLA interference test—that Defendant had notice of Maligranda's intent to seek FMLA leave and interfered with Maligranda's FMLA benefits.

Finally, Maligranda must allege facts sufficient to show "'prejudice,' meaning harm resulting from the violation." *Ziccarelli*, 35 F.4th at 1084. A failure to provide notice of FMLA rights can prejudice a plaintiff. For instance, in *Reitman,* 764 F. Supp. 3d 717, a teacher had informed her employer about her husband's malignant brain tumor and her need to take time off to care for him. *Id.* at 722–24. The court denied the school district's motion to dismiss her FMLA interference claim, recognizing that the school district's failure to provide notice of her FMLA rights prejudiced her: she had to work additional days, expend time and energy to sort out her retirement benefits without consideration of FMLA benefits, and suffered a loss in income "because she was denied the opportunity to make informed and timely decisions about leave options that she would have been entitled to under the FMLA . . . . [She] allege[d] significant financial harm that could have been avoided had plaintiff been properly informed of her FMLA rights." *Id.* at 726.

So too here. Maligranda alleges that, had he received information about his FMLA rights, he "would have exercised his FMLA rights to seek an accommodation related to his disabilities," and that Defendant's failure to provide the information prevented him from exercising those rights prior to his termination. (FAC [24] ¶¶ 83–84, 176–177, 183; Pl. Opp. [34] at 11.) Maligranda's termination paperwork stated that he was terminated because he was "no longer needed," a reason he contends "was false and pretextual." (FAC [24] ¶¶ 87, 88.) Indeed, he has alleged effective job performance, and there is no indication that Defendant suddenly stopped needing the work of grinders. These circumstances could support an inference that Defendant's real reason for terminating Maligranda was his actual or perceived need for extended or intermittent FMLA leave. Perhaps because Plaintiff referred to "seeking an accommodation" as part of his FMLA claims, Defendant contends that Plaintiff's FMLA interference claim is in fact an ADA failure to accommodate claim in disguise. (Def. Mem. [32-1] at 15.) The court disagrees. The obligation to accommodate a person with disabilities does not require an employer to allow a worker to take

extended leave. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017). FMLA does impose that requirement. *See* 29 U.S.C. § 2612(a)(1)(D). Defendant's alleged failure to make information about FMLA leave available to Maligranda arguably prejudiced him: it deprived him of the opportunity to make a request for leave to which he was entitled, which may have enabled him to stabilize his physical condition, and which would have required Defendant to keep his position open for him during leave. The motion to dismiss Count VIII is denied.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss [32] is granted in part and denied in part. The motion is granted with respect to Counts II and V, which are dismissed without prejudice. The motion is denied with respect to Count VIII.

ENTER:

Dated: October 21, 2026

REBECCA R. PALLMEYER
United States District Judge